IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Jacorey Skottmyhre,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Nuway Alliance,<br><br>　　　　　Defendant | Case No. 24-cv-3680<br><br>**COMPLAINT AND<br>JURY DEMAND** |

## NATURE OF THE CASE

1.  This is an action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12201, *et. seq.*, the Minnesota Human Rights Act ("MHRA"), Minnesota Statutes 363A.08, *et seq.*, to correct unlawful employment practices based upon disability and to provide appropriate relief to Plaintiff, Jacorey Skottmyhre ("Skottmyhre").

2.  As alleged with greater particularity below, Skottmyhre alleges that NuWay Alliance ("Defendant"), discriminated against him based on his disability by failing to accommodate his known disability and discharging him in violation of 42 U.S.C. §12112, Minnesota Statutes §363A.08 and wrongfully discharged him from his employment.

## JURISDICTION AND VENUE

3. This court has jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction, as the claims arise under the ADA, which are laws of the United States.

4. The Court has supplemental jurisdiction of Skottmyhre's state law claims under 28 U.S.C. § 1367 (a).

5. Skottmyhre timely filed a Charge of discrimination and jointly with the Equal Employment Opportunity Commission ("EEOC") and the Minnesota Department Human Rights. Skottmyhre received a Notice of Right to Sue from the EEOC and has complied with all administrative requirements.

6. Venue is proper because all of the employment practices and conduct alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Minnesota.

## FACTS

7. Skottmyhre has almost 20 years of experience doing non-profit work. He interned without pay for Defendant from January 1, 2022 to May 13, 2022. Then in May 2022 he was offered a Clinical support position. Skottmyhre was still interning 20 hours a week without pay but also got paid for 20 hours a week as part-time float staff. In August of 2022 Skottmyhre got his license and was offered a full-time counselor position with Defendant.

8.      Skottmyhre loved his job and working with clients. He wanted to go to work for Defendant because the population it serves mirrors very closely his own experience. His 2022 Performance review reflected that dedication and good work, with an above average rating. In December 2022, Skottmyhre took an unexpected and unpaid medical leave that extended into February 2023. Upon his return, he hit the ground running.

9.      During the course of Skottmyhre's journey he has dealt with many challenges as a Black Trans man navigating his own personal mental and physical health. During Skottmyhre's employment with Defendant the management has been made aware of his challenges with bipolar disorder and depression. As Skottmyhre struggled with his own mental health he rightfully looked to his employer, an organization dedicated to helping folks with addiction struggles, for grace and, if nothing else, legally entitled accommodation. He was met with an unwillingness to provide him with a reasonable accommodation so that he could continue to work full time at a job he loved and was good at.

10.     On April 6, 2023, Skottmyhre had been struggling with depression and had asked his supervisor, Karina Link, via text, to be able to go home to finish his work at home. This was not a new request for him or other counselors working for Defendant. Link responded by text that she needed Skottmyhre there, averring it was NuWay policy that he be there.

3

11. But this was not Defendant's policy. In fact, there was nothing prohibiting Skottmyhre from doing billing from home, except Defendant's management seeing him struggling with and having knowledge of his depression, and then choosing not to provide him with this reasonable accommodation.

12. Skottmyhre then reached out to Defendant's management by email on April 14, 2023, sharing in great detail all of the recent challenges that had led to his requesting a reasonable accommodation. He told of all the death and illnesses amongst his friends and family over a short span of time. He told of ongoing struggles he faced daily as a black transgender man.

13. Skottmyhre's April 14, 2023, communications to Defendant also included two letters, one from his treating physician, Dr. Pierre, and another from his psychologist, Dr. Cheri Kuhn. The letter from Dr. Pierre advised Defendant that Skottmyhre was under the doctor's care and that he missed those two days because of an exacerbation of symptoms. Dr. Pierre advised Defendant that Skottmyhre would return to work on April 17, 2023 and that "…we will consider accommodations in the future."

14. Skottmyhre's email to Defendant on April 14, 2023, also included a letter dated April 14, 2023, from his psychologist, Dr. Cheri Kuhn. In her letter Dr. Kuhn advised Defendant that Skottmyhre had recently had

4

episodes of stress responses from his depression and that Skottmyhre needed flexibility at work to deal with these responses.

    15. Dr. Kuhn then set out her three recommended accommodations for Skottmyhre.

- He should be allowed to complete tasks that do not require face to face client time be completed at home (i.e. charting and client documentation).
- He should be allowed to work a hybrid model of work that enables him to complete work that is not with clients at either home or work depending on symptoms.
- He should be allowed to have access to intermittent FMLA to help in the event that he is unable to complete tasks that require client time.

    16. Dr. Kuhn then invites Defendant to contact her if they have any questions or need additional information. Defendant never reached out to Dr. Kuhn with any questions or requesting additional information.

    17. Defendant emailed Skottmyhre back in response to his April 14, 2023, email and indicated they had received his message and that they would work with Skottmyhre's supervisors to be in attendance for the meeting scheduled for Monday to go over his ADA requests. Management advised Skottmyhre the first part of the meeting "will be an interactive ADA meeting,

5

per your request below. We will discuss specific accommodations that you are requesting and we will determine if they are reasonable. Please send any supporting medical documentation you have tied to your ADA requests." Apparently, Defendant wanted to go through each request at the meeting scheduled for April 17th.

18.     At the meeting on April 17, 2023, Skottmyhre's supervisor and manager said nothing about the accommodation requests. Only their HR representative spoke. After the meeting, Defendant's management sent Skottmyhre an email advising him that they had all met "to discuss your request for ADA accommodation to perform the essential function of your Counselor position. Defendant's email continues by noting they had met to "discuss possible accommodations that are outlined in your Health Care Providers letter dated April 14, 2023."

19.     No discussion ever took place with Skottmyhre.

20.     The essential functions of Skottmyhre's position were not included in his job description.

21.     Defendant made determinations regarding both accommodation requests and denied Skottmyhre's reasonable accommodation requests.

22.     Defendant's "determination" made it clear that Defendant had determined the interactive process had been completed and this was the decision. Yet Defendant's determination was not reasonable and wholly failed

to recognize the precarious nature of Skottmyhre's mental health and depression when a situation immediately and urgently arises that necessitates his leaving work. Importantly, Defendant referenced no essential function in Skottmyhre's job description that would require this failure to accommodate this reasonable accommodation request. It failed to acknowledge that Defendant's counselors have, in the past, regularly been permitted to do charting and client documentation from home. Defendant unilaterally and unreasonably denied that right.

23. Instead of adopting the accommodations recommended by Skottmyhre's healthcare providers, under the proposed accommodation by Defendant, Jacorey was to go to his manager when he had a mental health emergency and let the manager know… so the manager could then decide if it is reasonable for Jacorey to be able to go home right then and do his charting.

24. Effectively, their only proposed accommodation was for Skottmyhre – in the middle of a mental health episode – to go to his boss, tell his boss what was happening, and his boss would diagnose him – every time – with either a satisfactory mental health episode for him to go home and chart from home, or would deny his request and make him stay at work.

25. Skottmyhre attempted to get clarification of Defendant's "determination." He sent a follow up email to management that same day, asking, "Can you please clarify what essential function of my job requires me

7

to complete non-client facing work such as charting and documentation from the NUWAY site instead of remotely?" Defendant responded "NUWAY reserves the right to determine where employees work. As my response indicated, we evaluate this case by case as it arises."

26. Skottmyhre's question about essential functions was not answered. That's because there was no essential function of his job that required him to complete non-client facing work such as charting and documentation at home.

27. Skottmyhre was able to perform the essential functions of his job and was a qualified disabled person.

28. Defendant failed to provide Skottmyhre with reasonable accommodation for the depression and bipolar disorder that he had made known to his managers and he was terminated because of his disability.

29. As a direct result of the unlawful and discriminatory conduct of Defendant, Skottmyhre has been injured and sustained damages for mental anguish, lost income, pain, suffering, attorney's fees and costs, and other damages.

## JURY DEMAND

30. Plaintiff hereby demands a trial by jury on any issue triable as a matter of right.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12201, et.seq.

31. Skottmyhre incorporates by reference paragraphs 1 through 27 and incorporates them herein.

32. Defendant's actions as set forth above constitute a violation of the ADA in violation of 42 U.S.C. §12112.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF THE
## MINNESOTA HUMAN RIGHTS ACT, MINN. STAT. §363A.08, et seq.

33. Plaintiff incorporates by reference paragraphs 1 through 27 and incorporates them herein.

34. Defendant's actions as set forth above constitute a violation of the Minnesota Human Rights Act, Minnesota Statutes §363A.08.

WHEREFORE, Plaintiff prays for Judgment against Defendant as follows:

1. Damages for pain and suffering under Counts I and II.
2. Damages, including lost income, employment benefits or compensation, past and future, denied to Plaintiff by reason of the violation under Counts I and II.
3. Treble damages as allowed under the Minnesota Human Rights Act, Minnesota Statutes §363A.39, subd. 4, for violation of Count II.
4. Injunctive and equitable relief the court deems appropriate.
5. Prejudgment interest and judgment interest on all amounts allowed by law.
6. All damages and relief as available by law.
7. Attorney fees, costs, and disbursements as available under the ADA and the Minnesota Human Rights Act.

9

8. For such other and further relief as the court deems just and equitable.

Dated: September 17, 2024

**FIEBIGER LAW, LLC**

s/Rolf T. Fiebiger
Rolf T. Fiebiger (#391138)
Thomas D. Fiebiger (#307506)
6800 France Ave S., Suite 190
Edina, MN 55435
Telephone: 612.888.6084
Telephone: 612.399.6474
rolf@fiebigerlaw.com
tom@fiebigerlaw.com

Attorneys for Plaintiff
Jacorey Skottmyhre